**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

COREY SANDERS
ADC #113737                                                                                               PLAINTIFF

V.                                            5:08CV00049 JTR

CHARLOTTE GREEN,
Health Services Administrator,
East Arkansas Regional Unit, et al.                                                      DEFENDANTS

**MEMORANDUM AND ORDER[1]**

**I. Introduction**

In this § 1983 action, Plaintiff, Corey Sanders, a prisoner in the Varner Unit of the Arkansas Department of Correction ("ADC"), alleges that Defendants failed to provide him with adequate medical care while he was incarcerated at the East Arkansas Regional Unit ("EARU") and the Maximum Security Unit ("MSU").[2] *See* docket entries #2 and #7.

Defendants have filed a Motion for Summary Judgment, a Supporting Brief, and a Statement of Undisputed Facts. *See* docket entries #72, #73, and #74. Although he has been directed to do so, Plaintiff has *not* filed a Response to Defendants' Motion for Summary Judgment and a Statement of Disputed Facts, and the time for doing so has expired.[3] Accordingly, all of the facts set forth in

---

[1] On May 19, 2008, the parties consented to proceed before a United States Magistrate Judge. *See* docket entry #43.

[2] This is Plaintiff's only remaining claim. In earlier Orders, the Court dismissed Plaintiff's other § 1983 claims. *See* docket entries #50, #64, and #67.

[3] On January 20, 2009, the Court issued an Order directing Plaintiff to file, on or before February 10, 2009, a Response to Defendants' Motion for Summary Judgment and a Statement of Disputed Facts. *See* docket entry #76. Importantly, the Court advised Plaintiff that the failure to timely and properly do so would result in all of the facts set forth in Defendants' Statement of Undisputed Facts being admitted pursuant to Local Rule 56.1(c). *Id.* On February 10, 2009, the Court gave Plaintiff a *"final"* extension, until March 2, 2009, to comply with the Court's January 20,

Defendants' Statement of Undisputed Facts are deemed admitted by Plaintiff.

## II.  Discussion

**A.     Admitted Facts**

In October of 2007, Plaintiff, who was incarcerated at the EARU, began to experience urinary incontinence and pain in his abdomen and lower back.  *See* docket entry #74.  Nurse Practitioner Debra West ordered four unspecified lab tests and continued Plaintiff's prescription for 800 milligrams of Ibuprofen for pain.[4]  *Id.*  The results of the lab tests were normal.

On November 3, 2007, Plaintiff was seen by Defendant Taylor, who prescribed a muscle relaxer and a bladder instability medication.  *Id.*  Plaintiff was seen by Defendant Taylor again on November 11, 2007.  *Id.*  Defendant Taylor admits that she suggested to Plaintiff that he was malingering.  *Id.*  Nevertheless, she: (1) ordered an abdominal x-ray, which demonstrated that Plaintiff was not suffering from kidney stones or any other abdominal abnormalities; and (2) renewed his prescription for the muscle relaxer.  *Id., Ex. B at 13-15.*

On November 21, 2007, Ms. West diagnosed Plaintiff with "probable prostatitis" and instructed him to take antibiotics and Tramadol, which is a prescription narcotic pain medication.[5]  *Id., Ex. B. at 16.*  Defendant Taylor saw Plaintiff on November 30, 2007, and continued his medications.  *Id., Ex. B. at 17.*

On January 3, 2008, Ms. West submitted a request for an outside urology consult.  *Id., Ex. B at 18.*  Defendant EARU Health Services Administrator Charlotte Green co-signed the request on

---

2009 Order.  *See* docket entry #82 at 2 (emphasis in the original).  Thus, for at least thirty days, Plaintiff has been on actual notice of a Court Order directing him to file a Response to Defendants' Motion for Summary Judgment.  Still, he failed to do so.

[4] Ms. West is not a Defendant in this action.

[5] Importantly, the prescription for Tramadol was continued throughout "most of the 2008 calendar year."  *See* docket entry #74 at ¶ 26.

January 8, 2008.[6]  *Id.*

Plaintiff was transferred to the MSU on January 22, 2008.  *See* docket entry #74.  Sometime just before his transfer, Defendant Green called an MSU nurse to advise her of Plaintiff's medical status, medications, and request for an outside urology consult.[7]  *Id.*  For unknown reasons, Plaintiff was never taken to see a urologist.  However, on January 28, 2008, he was seen by MSU contract physician Dr. Neema Suphan, who ordered an intravenous pyleogram.  The results of this test were normal.[8]  *Id.*, Ex. B. at 20.

On February 22, 2008, Plaintiff filed this § 1983 action alleging that Defendants were not adequately treating his medical condition.  *See* docket entry #2.  Importantly, Plaintiff did not request monetary damages, other than reimbursement for the filing fee.  *Id.*  Instead, he sought injunctive relief requiring Defendants to provide him with "the necessary medical consultation and treatment," including "a cystoscopy . . . colonoscopy. . . MRI . . . CAT scan" or other "modern day tests" to properly diagnose his condition.  *Id.* at 42.

On April 9, 2008, Plaintiff received an MRI of his lower back, which was normal.  *See* docket entry #74, Ex. B at 26-28.  On April 14, 2008, Plaintiff received a CT scan of his abdomen and pelvis, which revealed "diverticulosis without evidence of acute diverticulitis."  *Id.,* Ex. B at 29.  Plaintiff is being treated for this condition with medications.  *See* at 32-51.

In his affidavit filed in support of Defendants' Motion for Summary Judgment, Defendant ADC Medical Director Dr. Roland Anderson explains that he did not personally examine or treat Plaintiff.  *See* docket entry #74, Ex. C.  Importantly, Defendant Anderson states that, based upon his

---

[6] It is unclear whether the request was ever approved.

[7] Plaintiff did *not* name any MSU healthcare providers as Defendants.

[8] An intravenous pyleogram is "an x-ray examination of the kidneys, ureters, and urinary bladder that uses iodinated contrast material injected into the veins."  *See* docket entry #74 at ¶ 19.

review of Plaintiff's medical records, it is his professional medical opinion that "the medical care and treatment provided to Plaintiff was and is appropriate and satisfactory for his complaints." *Id.* at 2.

**B.     Legal Analysis**

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Court held that a prisoner's Eighth Amendment right to be free from cruel and unusual punishment is violated when prison officials are deliberately indifferent to a prisoner's serious medical needs. This standard involves both an objective and a subjective component. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). First, a prisoner must demonstrate that he had or has an objectively serious medical need. *Id.* Second, a prisoner must show that prison officials subjectively or actually knew of and deliberately disregarded those needs. *Id.* Importantly, negligence, gross negligence, or a mere disagreement with the treatment decisions does not rise to the level of a constitutional violation. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006); *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995). Keeping these legal principles in mind, the Court concludes that Defendants are entitled to summary judgment.[9]

First, Plaintiff's medical records establish that he received numerous diagnostic tests, almost all of which were normal. Additionally, in response to Plaintiff's complaints of discomfort, he always received treatment and was prescribed a number of medications to relieve his symptoms. *See Logan v. Clarke*, 119 F.3d 647, 649-50 (8th Cir. 1997) (finding that prison doctors were not

---

[9] It is well settled that summary judgment should only be granted when the record, viewed in a light most favorable to the nonmoving party, shows that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of informing the court of its basis for the motion and identifying the parts of the record that show lack of a genuine issue. *Celotex,* 477 U.S. at 323. To defeat a motion for summary judgment, the nonmoving party must go beyond the pleadings and establish "by affidavits, or by the depositions, answers to interrogatories, and admissions on file" that specific facts show a genuine issue for trial exists. *See* Fed R. Civ. P. 56(c); *Celotex,* 477 U.S. at 324.

deliberately indifferent when they treated the prisoner on "numerous occasions" and "made efforts to cure the problem in a reasonable and sensible manner").

In addition, Defendant Anderson's *unopposed* affidavit establishes that the medical care Plaintiff received was constitutionally adequate. Although he has been given the opportunity to do so, Plaintiff has failed to come forward with *any* medical evidence to refute that conclusion. *See Dulany*, 132 F.3d at 1240-43 (explaining that: "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment").

Second, Plaintiff's request for injunctive relief, which seeks further medical testing and treatment, is now moot because it is *undisputed* that, after he filed his Complaint, he received an MRI, a CAT scan, and medications to treat what has now been diagnosed to be diverticulosis.

Third, Plaintiff has failed to create any genuine issue of material fact relevant to his inadequate medical care claim against Defendants. Specifically, although Defendant Taylor concedes that she initially thought Plaintiff was malingering, she nevertheless prescribed medications and ordered an x-ray. Similarly, it is undisputed that Defendant Green co-signed the urology consult request and that she passed the request along to her counterparts at the MSU. There is no evidence suggesting that she had the authority to approve the request or otherwise ensure that MSU healthcare providers took Plaintiff to see a urologist.[10]

Finally, it is undisputed that Dr. Anderson did not treat Plaintiff. Rather, as Regional Medical Director, he had supervisory authority over healthcare providers who treated Plaintiff. *See Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (explaining that there is no vicarious liability

---

[10] Additionally, shortly after making his request to see a urologist, Plaintiff was examined by Dr. Suphan. Plaintiff has failed to produce any evidence suggesting that the medical treatment he received from Dr. Suphan was constitutionally inadequate.

in § 1983 actions, and, instead, a defendant may be held liable only for his or her direct, personal involvement in the alleged constitutional violation).

### III. Conclusion

IT IS THEREFORE ORDERED THAT:

1.     Defendants' Motion for Summary Judgment (docket entry #72) is GRANTED, and this § 1983 action is DISMISSED, WITH PREJUDICE.

2.     The Court CERTIFIES, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this Memorandum and Order and the accompanying Judgment would not be taken in good faith.

Dated this 5th day of March, 2009.

_____
UNITED STATES MAGISTRATE JUDGE